**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

ERIN ORTINO,                                    CASE NO.:

    Plaintiff,

v.

CARMINE MARCENO, in his official
capacity as SHERIFF, LEE COUNTY,
Florida, ANDREW ORCUTT, in his
individual capacity, JOHN HOLLOWAY,
in his individual capacity, KATHERINE
MCCANN, in her individual capacity,
DEAN RAWLINS, in his individual
capacity,

    Defendants.

_____/

## COMPLAINT

Plaintiff, ERIN ORTINO, hereby sues Defendants, CARMINE MARCENO, in his official capacity as SHERIFF, LEE COUNTY, DEAN RAWLINS, in his individual capacity, ANDREW ORCUTT, in his individual capacity, JOHN HOLLOWAY, in his individual capacity, and KATHERINE MCCANN in her individual capacity,

## NATURE OF THE ACTION

1.    This is an action brought under common law of the State of Florida and the First and Fourteenth Amendments to the United States Constitution through 42

U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and by 42 U.S.C. §1988 which authorizes the award of attorney's fees and costs to prevailing Plaintiff in actions brought pursuant to 42 U.S.C. §1983.

2.     This action involves claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, ERIN ORTINO, has been a resident of the State of Florida and was employed by Defendant.

4.     At all times pertinent hereto, Defendant, CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida, hereinafter "SHERIFF," has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

5.     At all times pertinent hereto, Defendant, ANDREW ORCUTT, in his individual capacity, was a resident of the State of Florida and was employed by Defendant SHERIFF as a Deputy. He is thus sui juris.

2

6. At all times pertinent hereto, Defendant, DEAN RAWLINS, in his individual capacity, was a resident of the State of Florida and was employed by Defendant SHERIFF as a Deputy. He is thus sui juris.

7. At all times pertinent hereto, Defendant, JOHN HOLLOWAY, in his individual capacity, was a resident of the State of Florida and was employed by Defendant SHERIFF as a Deputy. He is thus sui juris.

8. At all times pertinent hereto, Defendant, KATHERINE MCCANN, in her individual capacity, was a resident of the State of Florida and was employed by Defendant SHERIFF as a Deputy. She is thus sui juris.

## CONDITIONS PRECEDENT

9. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

10. Plaintiff, a female, began her employment with Defendant on or about March 5, 2019, and held the position of Detective at the time of her wrongful termination on or about April 16, 2024.

11. Plaintiff was a loyal and dedicated employee. She was a decorated official with Defendant, with awards including the Certificate of Recognition in August 2020, Disaster Response Commendation in May 2023, two Educational

Achievements in October 2023, Deputy of the Quarter in February 2024, and Years of Service Certificate in March 2024.

12.    Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her gender, and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

13.    The disparate treatment and retaliation came at the hands of specifically but not limited to, Sheriff Carmine Marceno, Undersheriff John Holloway, Deputy Andrew Orcutt, Sergeant (Sgt.) Dean Rawlins, all males, and Sgt. Katherine McCann, a female.

14.    Furthermore, during her employment with Defendant, Plaintiff was treated worse than similarly situated male counterparts, including Deputy Christopher Doughty, Major Mark Shelley, Deputy Pablo Magallanes, and Deputy Michael Soto, as discussed below.

15.    On or around February 6, 2022, Plaintiff was assigned to a detective position with the Criminal Investigation Division (CID). On or around February 15, 2022, Plaintiff was informed to pick up an unmarked patrol vehicle and turn in her marked patrol vehicle. Plaintiff was assigned an unmarked patrol vehicle, however,

4

which had not been cleaned and the inside was covered in spit-up chewing tobacco, and smelled of cigarettes.

16. Plaintiff reported the condition of the vehicle to the male Fleet Captain, John Long, who phoned the Plaintiff's supervisors, Lt. Jeffrey Dektas and Sgt. Timothy Teter, both male. Plaintiff was told that Captain Long was irate at the refusal to accept the tobacco-covered, unclean vehicle, which would have been a violation of the Lee County Sheriff's Office (LCSO) policy if Plaintiff accepted the vehicle smelling like cigarettes and with tobacco.

17. Plaintiff was punished for refusing the tobacco and smoke-ridden vehicle by being denied a clean unmarked detective vehicle, which was available, and being required to switch vehicles with another deputy, giving the Plaintiff an older, marked vehicle even though detectives were assigned unmarked vehicles. Plaintiff was the only female detective in COD at that time and the only detective with a marked vehicle.

18. Additionally, Plaintiff was ordered by Captain Blake Lee, a male, to apologize to Long for the complaint about the unmarked vehicle, even though tobacco and cigarette smoke in agency-issued vehicles are a violation of LCSO Policy. Plaintiff was informed by Sgt. Teter that the refusal to accept the vehicle would result in being "black balled," and being assigned older vehicles.

19.    Furthermore, Plaintiff was treated worse than similarly situated male counterparts, including but not limited to Deputy Pablo Magallanes. Deputy Magallanes was assigned a patrol vehicle that smelled of tobacco and cigarettes approximately one month prior to Plaintiff being assigned the same type of vehicle. Deputy Magallanes also complained about the cigarette smell and the unclean state of the vehicle, to which the Fleet Operations personnel apologized and took the vehicle for a deep cleaning, something they refused to do for Plaintiff.

20.    In contrast to Plaintiff's treatment, Deputy Magallanes did not receive any punishment for refusing the vehicle but was instead issued an apology and had the situation immediately rectified.

21.    In further disparate treatment of Plaintiff for her gender, newer male detectives were assigned newer unmarked patrol vehicles before Plaintiff was ever issued an unmarked patrol vehicle at all.  Approximately one month later, around March, 2022, Plaintiff was provided with an older, unmarked patrol vehicle.  It was not until April 2023 that Plaintiff received a newer model unmarked vehicle, like her male counterparts.

22.    In or around October 2022, Plaintiff was assigned to rescue and recovery efforts after Hurricane Ian struck the area and caused destruction to Bonita Springs and other areas of LCSO.

23. During this time, Plaintiff became acquainted with Grace Birch, a female, who informed Plaintiff that she was a volunteer with LCSO. Birch provided deputies with food while they were working Hurricane Ian cleanup.

24. In or around September 2023, Plaintiff observed a door with Grace Birch's name on it, but noticed that no one was ever present in the office. Plaintiff began to ask questions to Sgt. McCann, one of Plaintiff's supervisors, about the "office," and later learned it was a storage closet assigned to a "consultant," Grace Birch, who was paid by LCSO.

25. In response to Plaintiff's questions about this closet area, McCann said it was a storage area for "LCSO Swag" such as stuffed animals, frisbees, gift bags, and other materials. Plaintiff began asking Sgt. McCann and Sgt. Adam Winton, another of Plaintiff's supervisors, questions about Birch, and whether she was on the payroll, since Plaintiff was originally informed that Birch was a volunteer.

26. Plaintiff then learned through McCann that there were several "consultants" paid by the Defendant, including Kenny Romano (a jeweler), Birch (a volunteer), and Scott Griffith (a personal trainer). Around the September/October, 2023 time period, Plaintiff verbally expressed concern to Sgt. McCann that these individuals were never on site at Defendant's headquarters yet were receiving paychecks from Defendant even though they were not doing any work for the

Defendant Sheriff.  They were, in other words, getting paid for work they did not perform at taxpayer expense and she expressed concern for this to McCann.

27.    Moreover, while Plaintiff was a detective assigned to CID from approximately February 2022 to September 2023, Plaintiff was assigned approximately double the number of assignments as other male detectives.  As stated above and notably, the detectives were all males, aside from Plaintiff.

28.    Around July or August 2023, Plaintiff confronted her direct supervisor, Sgt. Teter, regarding the extra assignments in COD and prepared a report of each district in the entire county to show the clear pattern of disparate treatment in which Plaintiff was assigned far more cases than her male counterparts. Despite this, Teter denied Plaintiff any additional assistance and refused to distribute the cases evenly.

29.    Plaintiff also presented this information to Captain Lee, Teter's supervisor, requesting more detectives to assist with the overload of assignments. Lee advised that he could make efforts to get more detectives to assist Plaintiff; however, Plaintiff ultimately did not receive this assistance. Notably, Plaintiff was the Field Training Officer for the new detectives located in the South District, as well as being the only detective who was an Intel Liaison for the City of Bonita Springs while carrying by far the heaviest caseload of all detectives.

30.    To Plaintiff's knowledge, she was the only detective who was regularly assigned additional tasks outside of her job description, which were supposed to be

8

completed by supervisors. Plaintiff conducted supervisory tasks assigned normally to a sergeant, including but not limited to assigning cases, approving cases, reviewing co-workers' assignments, and reporting to Command Staff. Plaintiff received no additional pay for these tasks.

31.    On or around April 11, 2023, Plaintiff was told that the Sheriff was holding a fundraiser for his re-election campaign in which law enforcement personnel were "highly encouraged" to attend. Plaintiff was advised by Lt. Dektas and Sgt. Teter that they were required to provide Command Staff with the names of employees who refused attendance, and the stated reason why they would not be in attendance. Dektas and Teter also noted to Plaintiff that vacation would not be considered a "valid excuse."

32.    Plaintiff informed Lt. Dektas and Sgt. Teter that it was illegal to force Plaintiff to attend an off-duty campaign event held by the Sheriff. Lt. Dektas then warned Plaintiff that if she did not attend, Command Staff would be informed, and it would not look good for her future career.  Plaintiff was also instructed by either Dektas or Hardin on a "suggested" amount of money to donate to the campaign, which was set at $100 for deputies.  Plaintiff also opposed this illegal practice to both Dektas and Teter.

33.    Additionally, Plaintiff was informed by Lt. Dektas that the Command Staff were writing a report on the money each agency member contributed to the

9

Sheriff's campaign, and if Plaintiff wished to be promoted, she was advised to donate money. Plaintiff reluctantly attended the event and donated money to the campaign in fear of retaliation from the Sheriff. Plaintiff told her direct supervisors, Sgt. Teter and Lt. Dektas, on several occasions that pressuring deputies to contribute was illegal. Their responses to Plaintiff were that they felt their "hands were tied" as they were in a similar situation. The Sheriff also showed up at this event in uniform which Plaintiff also reported to Teter and Dektas as illegal as he was campaigning while on duty.

34.    In or around 2023, the Plaintiff learned LCSO was requiring deputies to take their marked vehicles to have them re-striped and marked with "Sheriff Carmine Marceno" along with the assigned vehicle numbers removed to be replaced with a new system of numbers. Plaintiff also discovered that LCSO, at the request of the Sheriff, was changing the Districts to "Precincts," changing unit names to new names, such as CID to "Crime Section," all of which would require a large expense to taxpayers. Consequently, Plaintiff verbally expressed her disapproval to Sgt. Bryce Hardin, one of Plaintiff's supervisors, and Dektas and accused the Sheriff of misappropriation of taxpayers' dollars. Plaintiff's allegations were dismissed by Hardin and Dektas, as they appeared to be afraid to speak out against the Sheriff.

35.    In or around the Summer 2023, Sgt. Morgin Evins, a female, phoned Plaintiff asking if she was interested in transferring to Intel, to which Plaintiff

10

declined.   Shortly thereafter, Sgt. Winton called Plaintiff and asked if she was interested in transferring to the School Threat Enforcement Team (STET), to which she declined.  Plaintiff was then informed by Sgt. Teter to reconsider transferring, because declining a third offer could result in being blacklisted by Command Staff. A third offer was made by Sgt. McCann, which ultimately resulted in Plaintiff transferring to STET in or around September 2023.

36.   In or around September 2023, Plaintiff observed approximately 20 large picture frames, approximately 26 by 47, with a custom-style frame holding Sheriff Marceno's photographs.  It appeared that these frames had just arrived at LCSO from custom framing.  Plaintiff discovered the frames were to replace the older 8 by 10 frames in each public area of the Sheriff's Office and substations. Plaintiff reported this to Sgt. McCann and explained it was a waste of taxpayers' dollars to have newer, larger custom frames made to replace the existing photographs.  Plaintiff verbally expressed her concern about misspending taxpayer money and compared the frames/issue to North Korea's dictator Kim Jung Un.

37.   Furthermore, Plaintiff's supervisor, McCann, yelled at Plaintiff on phone calls when she was upset. By way of example, around September 2023, while investigating an alleged battery to a school official, McCann yelled at Plaintiff on the phone for not conducting an arrest for which there was no probable cause.

11

38.    During this incident, Plaintiff used an example of Hitler and the Nazis to describe why it would be illegal for Plaintiff to make a wrongful arrest, and that Plaintiff refused to arrest the individual because there was no probable cause. Because Plaintiff refused to arrest the individual, Sgt. McCann reported it to her chain of command, after which Plaintiff was told "they", meaning Holloway and the Sheriff, were upset.

39.    To rectify the issue, Plaintiff wrote all of the facts and information regarding the incident and provided it to the State Attorney's Office for review, in which the State Attorney's Office agreed with Plaintiff and refused to issue a warrant for the arrest. In contrast, male detectives did not receive this treatment from McCann and were not required to falsely arrest citizens when there was no probable cause.

40.    Additionally, routinely between late 2023 and into 2024, Plaintiff, while working other cases in STET, was required to respond to a scene while "on call" or "off duty" solely for the purpose of including in reports that "STET responded and was on scene" in order to appease Command Staff and Undersheriff Holloway. She was told to just clock in, go the scene and then go home, so that the deputy working the matter would be able to put into the report that STET was present at the scene.  Plaintiff told Sgt. McCann numerous times "that's stupid and a waste of taxpayers' dollars." Sgt. McCann did not respond to this statement.

12

41.    On or around January 31, 2024, Plaintiff was requested to participate in the local Edison parade in which the Sheriff's Office had a float. The event was to be off-duty, but deputies were told they could make up the time by leaving early from their regular shifts but still get paid, thus stealing from the agency. Plaintiff declined to participate and was later uninvited from the event. Plaintiff expressed to Sgt. McCann that it would be illegal for deputies to trade time that the deputies participated in the parade for leaving early on their shifts and getting paid for that time when they were supposed to be on the clock.

42.    On or around November 2023 to March 2024, while assigned to STET, Plaintiff was regularly assigned additional tasks outside of her job description, which were supposed to be completed by supervisors and other deputies who were all males. Notably, Plaintiff received no additional pay for these tasks although she was routinely assigned to correct the work of other male deputies working in STET.

43.    On these occasions, while Plaintiff was assigned to STET, Sgt. McCann required the Plaintiff to correct other deputies, "call out emails," reports, and review completed work.  On numerous occasions, Plaintiff would arrive home at the end of a shift to be told at the last minute to complete another male detective's work. Additionally, the Intel Unit was short a detective and utilized Plaintiff to work on Intel-related cases, while Plaintiff was required to still maintain her own caseload in STET.

44. In or around January to February 2024, Plaintiff verbally stated to McCann that she was concerned about the misappropriation of tax dollars as Defendant Sheriff replaced all office doors within the Defendant Sheriff's headquarters with expensive brand new doors even though they had just been replaced a month or so prior.

45. Plaintiff learned that the Sheriff did not like the existing new doors, which is why he wished to have them replaced again. Plaintiff also discovered that LCSO paid approximately $12,000 for each door, and then an additional $10,000 for the replacement.

46. Subsequently, Plaintiff confirmed with a construction employee that LCSO did not receive a refund for the original door, therefore costing the taxpayers approximately $22,000 per door.

47. Additionally, Plaintiff asked the construction employee if they handle both commercial and residential work, in which the employee advised they normally do "commercial only," however, they have made an exception and did work at Marceno's residence. Plaintiff then asked if Marceno paid for the residential work, but the employee did not respond to the question. Notably, this conversation was carried out while under video surveillance of LCSO.

14

48.     Further, Plaintiff inquired as to the location of the first set of doors, which were installed and then removed, to which Plaintiff was informed the doors were "in storage."

49.     Plaintiff expressed to McCann around February, 2024 that she was concerned that taxpayers' money was being spent on expensive doors excessively, when they could have been replaced at a much lower cost and only one time. McCann responded that Plaintiff should "leave it alone."

50.     Plaintiff also voiced her concerns in the February 2024 time period regarding Defendant's misappropriation of tax dollars regarding the purchase of the doors to LCSO Attorneys Katherine Welch and Kimberly Sams, who worked in Defendant's legal department and with whom Plaintiff was acquainted.

51.     On March 6, 2024, Plaintiff complained to Sgt. McCann about being kicked out of the office while trying to complete reports due to Sheriff Marceno hosting the "Tour Beyond the Doors," where civilians were brought in for a tour about once a month. Plaintiff would have to be frequently interrupted from her duties so the tour could be given.

52.     Subsequently, Plaintiff asked Sgt. McCann how often these tours would go on, as it was interrupting her ability to complete assignments. Sgt. McCann spoke to her chain of command and told Plaintiff she received no answer.

53.    Additionally, in March, 2024, Plaintiff asked Sgt. McCann about the "Dark Web" room located inside STET's office area, which was "for show" only and not used. This room was falsely presented to the public as a room used for "dark web" investigations. The room had a high-tech computer, but no one was allowed to use it, including Plaintiff, who had recently been trained in dark web investigations.

54.    Between September 2023 to March 2024, Plaintiff regularly expressed her First Amendment Right by speaking out to her supervisors about wasting taxpayer dollars, misappropriating funds, and possible money laundering activity regarding the construction being conducted at LCSO Headquarters.

55.    On or around March 17, 2024, Plaintiff was out to eat with her family at a restaurant when her father physically assaulted her. Plaintiff's wife, Allison Saturnini, a female, had already left the restaurant but returned to pick Plaintiff up due to the altercation.

56.    When Plaintiff and Saturnini arrived at their home, Plaintiff noticed a vehicle parked outside, which belonged to their friend Lindsey Hayes, a female. Notably, Saturnini had been assisting Hayes in transporting her to ketamine treatment appointments for severe mental health issues. Prior to this occasion, Hayes had been instructed to no longer come to the home uninvited.

57.    Prior to Plaintiff's arrival at the home, Hayes contacted her friend, off-duty Deputy Matthew Milligan, who was employed with Defendant Sheriff, and

16

falsely informed him that Plaintiff was inside the home during the time of the phone call, and was "acting crazy." This was false and verifiable through Plaintiff's security camera footage.

58. Saturnini informed Plaintiff that she did not know why Hayes was in their home, causing Plaintiff to feel alarmed. Plaintiff attempted to enter her home by opening the garage door, where Hayes was present and grabbed Plaintiff, and physically escorted her inside.

59. Plaintiff asked Hayes to leave the residence. However, Hayes refused and proceeded to attack Plaintiff physically, restraining her arms, throwing her to the ground, and attempting to strangle her. Notably, Hayes has prior training in physical restraint techniques and was approximately 100-150 pounds larger than Plaintiff.

60. Hayes continued to restrain and held Plaintiff against her will for approximately 13 minutes. Hayes then dragged Plaintiff out of the home, and Plaintiff ran away in fear. Hayes proceeded to chase after the Plaintiff. While chasing Plaintiff, Hayes then again contacted Milligan a second time, who contacted on-duty deputies to respond to the area.

61. Plaintiff ran approximately one-half mile from her residence, with Hayes chasing behind her. Although Milligan was off-duty and did not respond to

17

the scene, he wrote a narrative the following day, in favor of Hayes' version of events without speaking with Plaintiff.

62.    Subsequently, while Plaintiff was running away from her residence, she called her supervisor, McCann, and asked her for help. McCann informed Plaintiff that she could not help her and that she should return home. Plaintiff informed McCann she could not return home due to being attacked. During this phone call, Orcutt and two other male Deputies, Carlos Linarres and Raymond Tellez-Ferriol, arrived at Plaintiff's location, about one-half mile from her home. Notably, the deputies spoke with Hayes first, then Plaintiff.

63.    Plaintiff explained to Orcutt that she was physically attacked by Hayes in her home. Orcutt dismissed Plaintiff's concerns and even accused Plaintiff of having a knife, yet refused to search her. Since Plaintiff knew Orcutt's body camera was recording, she emptied her own pockets and searched herself to show that there was no knife or other weapons.

64.    Plaintiff asked Orcutt and the other deputies multiple times if she was being detained. Orcutt answered no; however, one of the other deputies answered yes, simultaneously, which confused Plaintiff.

65.    Ultimately, Plaintiff was told she was being detained by Orcutt, and he transported her to the Lee County Jail.

66.     During the arrest, captured on body camera footage, Orcutt stated that command staff, specifically Holloway, ordered him to arrest Plaintiff. Orcutt later, that same night, agreed Plaintiff was being illegally detained. Off camera, Orcutt explained to Plaintiff that the command to arrest her came from Holloway. Plaintiff responded that "you cannot detain people without a reason," to which Orcutt responded by stating it was only for "questioning."

67.     After approximately one hour of being detained, Plaintiff stated to Orcutt again that she had been illegally detained. Deputy Orcutt acknowledged Plaintiff's statement, but later claimed that he was not present the entire time, which was not accurate, as he was the initial responding deputy.

68.     After approximately eight hours of being detained, Plaintiff was wrongfully arrested for Battery Causing Bodily Harm and Simple Assault. The arrest was made based on false statements made by Hayes, but Orcutt and Rawlins failed to follow standard procedure and conduct a proper investigation, omitting key evidence and/or refusing to look at exculpatory evidence like the security camera footage.

69.     These omissions also included Saturnini's statement which supported Plaintiff's statements and countered Hayes' accusations, the failure to photograph the scene, and the failure obtain video camera footage, all of which would have

19

shown that Hayes' statements were dishonest, deceitful, and that Plaintiff did not commit assault or battery.

70.    Further, other officers who were present at the scene, Linarres, Turner, Winton, McCann, and Ferriol, failed to write any statements related to Plaintiff's arrest, which is contrary to standard procedure and policy, which requires all officers involved with an incident to write a supplemental statement.

71.    Subsequently, Defendant conducted an improper search and seizure of Plaintiff's home and vehicle the same day while Plaintiff was detained at the LCSO jail, despite Saturnini stating she did not grant permission for the deputies to enter Plaintiff and Saturnini's home.

72.    Instead of obtaining consent or a search warrant, McCann, Winton, and Flynn surrounded Saturnini and told her they were going to enter the residence. Saturnini asked, "do I legally have to let you come in?" to which Flynn responded, "One of us is going inside."

73.    After the officers were already entering the home without consent, Saturnini advised that she did not give permission for law enforcement to enter. Saturnini was informed by McCann that she did not have a choice, and McCann proceeded to conduct a search and seizure of Plaintiff's items in her residence without a search warrant.

20

74.    Notably, Winton and Watch Commander Thomas Flynn, a male, searched Plaintiff's patrol vehicle, which was parked in her driveway.

75.    Defendant, through McCann, stole personal items of value which belonged to Plaintiff, including but not limited to a Yeti can, ammunition, challenge coins, handcuffs, children's toys, medals awarded by Defendant Sheriff, and other sentimental items. Some of these items were never returned to Plaintiff.

76.    While Plaintiff was in jail, she was told to come to the Defendant Sheriff's office after she was released and she complied.

77.    The following day, on March 18, 2024, while Plaintiff was at the Sheriff's office, Plaintiff was cornered by Major Christopher Reeves and Major James Amrich, in Defendant's office and was handed resignation paperwork.

78.    Notably, the rooms were locked and secured by keycard access, which Plaintiff did not have at the time, as she was escorted in. Therefore, Plaintiff could not leave the vicinity if she so desired.

79.    Plaintiff refused to sign the resignation paperwork and explained her innocence to Amrich and Reeves, begging them to conduct a proper investigation.

80.    Subsequently, Marceno and Holloway called Plaintiff's father, who is a private investigator with a strong professional relationship with Defendant Sheriff, and advised Plaintiff's father to inform her to resign, or they would otherwise "release video footage," and release "information" to the media.

21

81.     After Plaintiff maintained her decision not to resign, on or around March 19, 2024, she was blasted by Defendant in the news, including news channel NBC2 and other various news outlets.

82.     At least one of the news articles included a false allegation that stated that Plaintiff used "deadly force" on a person. Plaintiff had previous knowledge that LCSO Public Information Office provides information directly to NBC2 through Lt. Christopher Fine.

83.     On or around March 19, 2024, Defendant Sheriff filed a Risk Protection Order against Plaintiff, which is an order filed against an individual who is deemed a threat to the community and directed that all firearms in Plaintiff's possession be provided to the Defendant Sheriff.

84.     Unbelievably, one of the charges levied against Plaintiff was battery and assault on her wife.  Plaintiff never battered her wife and her wife never levied these allegations against Plaintiff.  This battery charge involving Plaintiff's wife meant that she was unable to go home for around 14 days.

85.     Intel Sgt. Evins responded to Plaintiff's residence and removed all firearms due to the order. Plaintiff contested the risk protection order, presented evidence to the presiding judge, and ultimately, the risk protection order was dismissed due to insufficient evidence.

86.    On or around April 9, 2024, a new warrant was issued for Plaintiff's arrest. Therefore, Plaintiff turned herself in or around 11 p.m. that day and was thus wrongfully arrested by Defendant again.

87.    The new charges against Plaintiff wrongfully alleged Aggravated Assault with a Deadly Weapon and Improper Exhibition of a Dangerous Weapon against Hayes. Plaintiff was then incarcerated for approximately 27 hours, until around 2:30 p.m. the next day, before she was released.

88.    Upon Plaintiff's second arrest, Internal Affairs (IA) Commander Travis Hicks, a male, presented Plaintiff with a Withdraw of Appointment document for her termination, stating that the reason was due to her arrest. However, the document was dated April 8, 2024, which indicates that Plaintiff's termination was only based on her first arrest. Notably, the document was incorrectly signed by Holloway on the line for Marceno's signature.

89.    Furthermore, on or around April 10, 2024, no charges were filed by the State, and the case for Plaintiff's first arrest was administratively sealed.

90.    However, Plaintiff's wrongful termination was official on or around April 16, 2024. The termination cited that the termination was due to her arrest on March 17, 2024, indicating disregard for Plaintiff's proven innocence.

91.    The charges from Plaintiff's second arrest were dropped by the State on or around September 16, 2024, due to video evidence which supported Plaintiff's

statements and contradicted Hayes' accusations, along with other discrepancies stated by Hayes in the deposition which the Defendant Sheriff and his deputies should have known had a proper investigation been conducted. Notably, Orcutt and Rawlins refused to collect or cite the exculpatory video evidence in their initial report.

92.    Furthermore, during Plaintiff's employment with Defendant, Plaintiff was treated worse than similarly situated male counterparts, including Deputy Michael Soto, Deputy Christopher Doughty, and Major Mark Shelley.

93.    By way of example, Soto was arrested for Driving Under the Influence (DUI) in 2023 but was promptly un-arrested and taken home due to instruction from Commander James Bogliole. Soto was permitted to continue his employment with Defendant, receiving no reprimand for the incident. About ten months later, in 2024, Soto was arrested for a shooting that resulted in a jail sentence. Despite the severity of the incident, Soto was permitted to resign rather than be terminated, unlike Plaintiff.

94.    Doughty was arrested for domestic violence in an incident where evidence supported that he battered his wife by placing his arms around her neck. Defendant Sheriff consequently terminated Doughty. However, the state dropped Doughty's charges, and he was then re-hired by Defendant about two weeks later.

In contrast, Plaintiff has not been permitted to return to her employment with Defendant Sheriff and has not been rehired by him.

95. Lastly, Shelley was arrested for DUI and later pleaded guilty to the reduced charge of reckless driving. Defendant's response was to place Shelley on a brief administrative leave, provide transportation for Shelley to and from work until the case was resolved, and then Shelley was promoted from Commander to Major.

96. Plaintiff contends that the wrongful arrests and wrongful termination were discriminatory based on her gender, and because she used her First Amendment right to express concerns about Defendant regarding the misappropriation of tax dollars, possible money laundering regarding construction activity, and the hiring of consultants who did not complete real work for Defendant. None of the communications Plaintiff had about the misspending and waste of taxpayer money were part of her ordinary job duties.

97. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## <u>VIOLATION OF FOURTEENTH AMENDMENT RIGHT OF</u>
## <u>EQUAL PROTECTION</u>
### (Against Defendant SHERIFF)

98. Paragraphs 1 through 97 above are incorporated herein by reference.

99.    This count sets forth a claim against Defendant SHERIFF for violations of Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution, brought through 42 U.S.C. §1983.  These violations were of the type and character as to which any reasonable person would be aware. Defendant Sheriff is a person under the applicable law.

100.    Defendant SHERIFF acted to violate Plaintiff's Fourteenth Amendment right to equal protection, actionable under 42 U.S.C. §1983, in that Plaintiff was treated differently from her male counterparts in the absence of any rational basis for such differential treatment.

101.    Plaintiff has been, as set forth in part above, singled out for mistreatment which has led to harassment, threats, arrests, termination, and other damages, as described in part herein which has not happened to male deputies of Defendant, and she has been otherwise treated by Defendant SHERIFF in a differential and less favorable manner as compared to similarly situated males.

102.    Plaintiff has been, as set forth in part above, singled out for mistreatment and was otherwise treated in a differential and less favorable manner as compared to similarly situated males without a rational basis.  The actions taken against Plaintiff, set forth in part above, were taken by Defendant SHERIFF through its officers and supervisors, identified in part above, all of whom had the delegated authority to take actions against Plaintiff.  Their actions were either directed by the

26

Sheriff or his delegated final policymaker, Holloway, or were taken by other supervisors who, like Holloway, were delegated with final policymaking authority and whose actions were not subject to meaningful review.

103.   Defendant SHERIFF also participated in a custom, policy, and practice of singling Plaintiff out for the disparate treatment set forth in part herein. Defendant SHERIFF was deliberately indifferent to the training received by Defendants KATHERINE MCCANN, JOHN HOLLOWAY, ANDREW ORCUTT, CHRISTOPHER REEVES, JAMES AMRICH, and other agents, officers, and employees, and has condoned their actions, which violate the Equal Protection Clause of the Fourteenth Amendment.   Additionally, Defendant SHERIFF and Holloway, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to discipline the officers, employees, and agents, which sanctions and refusals established one or more policies, by final policymakers, that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.   The actions by Defendant SHERIFF occurred under color of state law, and are actionable under 42 U.S.C. §1983.

104.   As a direct and proximate result of Defendant SHERIFF's actions, set forth in part above, Plaintiff has been injured and has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with other

tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future.

## COUNT II
### VIOLATION OF FOURTEENTH AMENDMENT RIGHT OF EQUAL PROTECTION
### (Against Defendant JOHN HOLLOWAY)

105. Plaintiff realleges and incorporates by reference paragraphs 1- 97 above as if fully set forth herein. This count is pled in the alternative.

106. This count sets forth a claim against the Defendant JOHN HOLLOWAY for violation of Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution, brought through 42 U.S.C. §1983. These violations were of the type and character as to which any reasonable person would be aware.

107. Defendant JOHN HOLLOWAY is a person under the laws applicable to this Count.

108. Defendant JOHN HOLLOWAY acted to violate Plaintiff's Fourteenth Amendment right to equal protection, actionable under 42 U.S.C. §1983, in that Plaintiff was treated differently from her male counterparts, in the absence of any rational basis for such differential treatment.

109. Plaintiff has been, as set forth in part above, singled out for arrest, prosecution, termination and general harassment which has led to injury and other damages, which has not happened to other similarly situated males.

28

110. Plaintiff has been, as set forth in part above, singled out for mistreatment, was the target of false and vindictive allegations and charges, and was otherwise treated in a differential and less favorable manner as compared to similarly situated males. The actions taken against Plaintiff, set forth in part above, were taken by the Defendant JOHN HOLLOWAY.

111. Defendant JOHN HOLLOWAY misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983. The law was clearly established that the actions by Defendant violated the Fourteenth Amendment as alleged herein at the time that he took the actions at issue herein.

112. The foregoing actions of the Defendant JOHN HOLLOWAY were willful, wanton and in reckless disregard of Plaintiff's rights.

113. The law was clearly established that actions could not be taken against persons like Plaintiff due to her gender, as alleged herein.

114. Defendant JOHN HOLLOWAY personally participated in the actions violative of Plaintiff's right to equal protection under the Fourteenth Amendment.

115. As a direct and proximate result of Defendant JOHN HOLLOWAY's actions, set forth in part above, Plaintiff has been injured and has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience,

mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future.  Plaintiff is entitled to injunctive/equitable relief under this count and punitive damages.

**COUNT III**
**FIRST AMENDMENT RETALIATION**
**(Against Defendant SHERIFF)**

116.   Paragraphs 1 through 97 are incorporated herein by reference. This claim is against Defendant SHERIFF, who was the final policymaker for Defendant Sheriff.

117.   This is an action against Defendant Sheriff for violating Plaintiff's rights under the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983. Defendant Sheriff is a person under applicable law.

118.   Plaintiff's right to freedom of speech was violated when she engaged in constitutionally protected speech on matters of public concern, namely the utter waste of taxpayer money as alleged herein. Plaintiff had a clearly established right to engage in protected speech under the First Amendment without fear of government retaliation.

119.   Defendant Sheriff, acting through its final policymaker and/or other subordinates at the policymaker's direction, retaliated against Plaintiff by subjecting Plaintiff to adverse actions intended to chill, punish, or deter the exercise of First

Amendment rights, including but not limited to administrative interference, reputational harm, employment-related consequences, arrest and other unlawful acts of reprisal.

120. These actions were taken pursuant to one or more of the following theories of Monell liability:

a. An official policy formally adopted by Defendant SHERIFF, as the final policymaker;

b. A widespread and persistent practice or custom that, although not formally approved, is so common as to carry the force of law;

c. A failure to train employees on the constitutional limitations regarding retaliation for protected speech;

d. A failure to supervise or discipline subordinate employees known to engage in retaliatory behavior;

e. Ratification of unconstitutional acts by a final policymaker who had actual or constructive knowledge of the misconduct and approved or acquiesced in it.

121. Defendant misused his power, possessed by virtue of state law and made possible only due to being clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. § 1983.

122. The foregoing actions of Defendant were willful, wanton and in reckless disregard of Plaintiff's rights.

123. As a direct and proximate result of the Defendant's actions set forth herein, Plaintiff has been injured and has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with other tangible and intangible damages. These losses have occurred in the past, are occurring at present and are certain to occur into the future. Plaintiff is entitled to reinstatement and other remuneration attendant therewith including without limitation attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT IV
## FIRST AMENDMENT RETALIATION
### (Against Defendant HOLLOWAY)

124. Paragraphs 1 through 97 are incorporated herein by reference. This claim is brought against Defendant Holloway in his individual capacity.

125. Defendant, acting under color of state law, violated Plaintiff's rights under the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983.

126. Plaintiff's right to freedom of speech was violated when she engaged in constitutionally protected speech on matters of public concern. Plaintiff had a

32

clearly established right to engage in protected speech under the First Amendment without fear of government retaliation.

127. Defendant retaliated against Plaintiff by subjecting her to adverse actions intended to chill, punish, or deter the exercise of First Amendment rights, including but not limited to administrative interference, reputational harm, employment-related consequences, arrest or other unlawful acts of reprisal.

128. Defendant is a person under the laws applicable to this action and acted willfully and in reckless disregard of Plaintiff's clearly established constitutional rights.

129. At the time Defendant took adverse action against Plaintiff, it was clearly established that public officials may not retaliate against individuals for engaging in protected First Amendment activity. No reasonable official in Defendant's position could have believed the conduct at issue was lawful. Defendant is not entitled to qualified immunity.

130. As a direct and proximate result of Defendant's actions set forth herein, Plaintiff has been injured and has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with other tangible and intangible damages. These damages have occurred in the past, and are permanent

and continuing. Plaintiff is entitled to punitive damages against Defendant in his individual capacity.

## COUNT V
## FALSE IMPRISONMENT/ARREST UNDER STATE LAW
### (Against Defendant SHERIFF)

131. Paragraphs 1 through 97 are hereby re-alleged and incorporated herein by reference.

132. This is an action against Defendant SHERIFF for false imprisonment/false arrest. This Count is pled in the alternative and for the purposes of this count Defendant ANDREW ORCUTT and other deputies who participated in Plaintiff's arrest were acting within the course and scope of their duties with Defendant SHERIFF.

133. The Plaintiff is entitled to relief against Defendant SHERIFF in that ANDREW ORCUTT and others, acting in the course and scope of his employment with the SHERIFF, intentionally and unlawfully detained and restrained Plaintiff against her will, deprived Plaintiff of liberty without any reasonable cause, and maintained such complete restraint and deprivation for a period of time.

134. This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendant confining Plaintiff to an area in which the Plaintiff did not wish to be confined and by compelling the Plaintiff to go where she did not wish to go.

34

135. Plaintiff was further restrained by Defendant, through its agents and employees use of coercive words, threats of force as well as actual force, and immediate means of coercion against Plaintiff so that the Plaintiff was restrained and deprived of liberty. Defendant restrained Plaintiff without any justification and in the absence of probable cause. Defendant conducted no independent investigation into whether any criminal conduct had occurred.

136. At all times material to this action, and at all times during which the Plaintiff was being unlawfully restrained, the Plaintiff was restrained against her will, and without consent, so that the Plaintiff was not free to leave her place of confinement.

137. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff.

## COUNT VI
## FALSE IMPRISONMENT/ARREST UNDER STATE LAW
### (Against Defendant ANDREW ORCUTT)

138. Paragraphs 1 through 97 are hereby re-alleged and incorporated herein by reference.

35

139. This is an action against ANDREW ORCUTT individually. This Count is pled in the alternative. For the purpose of this Count alone, ANDREW ORCUTT was acting outside the course and scope of his duties and employment with Defendant SHERIFF.

140. The Plaintiff is entitled to relief against ANDREW ORCUTT in that he intentionally and unlawfully detained and restrained Plaintiff against her will on March 17, 2024 and thereafter, when Plaintiff was unlawfully deprived of her liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

141. This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendant confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

142. Plaintiff was further restrained by Defendant's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that the Plaintiff was restrained and deprived of liberty. Defendant restrained Plaintiff without any justification and in the absence of probable cause. Defendant conducted no independent investigation into whether any criminal conduct had occurred.

143. At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, the Plaintiff was restrained against her

will, and without consent, so that Plaintiff was not free to leave her place of confinement. Defendant ANDREW ORCUTT acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety.

144.    As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.   These damages have occurred at present, in the past and will most likely occur in the future.   Defendants are jointly and severally liable to Plaintiff.

## COUNT VII
## FALSE IMPRISONMENT/ARREST UNDER STATE LAW
### (Against Defendant DEAN RAWLINS)

145.    Paragraphs 1 through 97 are hereby re-alleged and incorporated herein by reference.

146.    This is an action against DEAN RAWLINS individually.  This Count is pled in the alternative.  For the purpose of this Count alone, DEAN RAWLINS was acting outside the course and scope of his duties and employment with Defendant SHERIFF.

147.    The Plaintiff is entitled to relief against DEAN RAWLINS in that he intentionally and unlawfully detained and restrained Plaintiff against her will on

37

March 17, 2024 and thereafter, when Plaintiff was unlawfully deprived of her liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

148.   This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendant confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

149.   Plaintiff was further restrained by Defendant's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that the Plaintiff was restrained and deprived of liberty. Defendant restrained Plaintiff without any justification and in the absence of probable cause. Defendant conducted no independent investigation into whether any criminal conduct had occurred.

150.   At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, the Plaintiff was restrained against her will, and without consent, so that Plaintiff was not free to leave her place of confinement. Defendant acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety.

151.   As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss

of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff.

**COUNT VIII**
**FALSE IMPRISONMENT/ARREST UNDER STATE LAW**
**(Against Defendant JOHN HOLLOWAY)**

152. Paragraphs 1 through 97 are hereby re-alleged and incorporated herein by reference.

153. This is an action against JOHN HOLLOWAY individually. This Count is pled in the alternative. For the purpose of this Count alone, JOHN HOLLOWAY was acting outside the course and scope of his duties and employment with Defendant SHERIFF.

154. The Plaintiff is entitled to relief against JOHN HOLLOWAY in that he intentionally and unlawfully caused and directed that Plaintiff be detained and restrained against her will on March 17, 2024 and thereafter, when Plaintiff was unlawfully deprived of her liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

155. This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendant confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

156. Plaintiff was further restrained by Defendant's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that the Plaintiff was restrained and deprived of liberty. Defendant restrained Plaintiff without any justification and in the absence of probable cause. Defendant conducted no independent investigation into whether any criminal conduct had occurred.

157. At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, the Plaintiff was restrained against her will, and without consent, so that Plaintiff was not free to leave her place of confinement. Defendant acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety.

158. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff.

## COUNT IX
## <u>FOURTH AMENDMENT VIOLATION – UNCONSTITUTIONAL SEARCH AND SEIZURE</u>
### (Against Defendant SHERIFF under 42 U.S.C. § 1983)

159. Plaintiff re-alleges paragraphs 1-97, above, and incorporates those allegations in this Count. This Count is pled in the alternative.

160. This count sets forth a claim against Defendant SHERIFF for unconstitutional search and seizure under the Fourth Amendment to the United States Constitution, in that Defendant operated to violate Plaintiff's rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware. For purposes of this count, all of the individual defendants and/or other officers, employees, and agents of Defendant Sheriff who entered Plaintiff's residence without consent, exigent circumstances or a warrant violated Plaintiff's Fourth Amendment rights and were acting at the direction of Holloway and/or Defendant Sheriff, as the final policymakers for the Defendant Sheriff.

161. Defendant SHERIFF misused its power, possessed by virtue of state law and made possible only because it was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

162. The foregoing actions of Defendant SHERIFF were willful, wanton and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification and/or in the absence of probable cause.

163. Based upon the facts presented to Defendant and the applicable law, no reasonable law enforcement officer could have concluded that there existed any legal basis to enter Plaintiff's home without being invited in or having a search warrant. The law was well settled and clearly established that the actions of the Defendant Sheriff constituted an unlawful search and seizure under the Fourth Amendment to the United States Constitution at the time the actions by Defendant Sheriff were committed.

164. The actions or inactions of Defendant SHERIFF as set forth in part above constituted exercises of deliberate indifference or reckless disregard for the safety of Plaintiff when it knew of and disregarded a risk to Plaintiff's health and safety.

165. Defendant SHERIFF and Holloway were the final policymakers were directed the illegal search of Plaintiff's residence. They also acted with deliberate indifference in the failure to train and to implement adequate supervisory procedures-or implemented no such policies or procedures--to prevent the harm that was caused to Plaintiff, including policies or procedures to properly search a residence, like Plaintiff's residence, as a direct result of which Plaintiff was subjected to unreasonable and illegal searches and seizures and injured. Defendant SHERIFF and Holloway also approved, sanctioned, and ratified the actions taken by

the Defendant Sheriff's deputies to illegally search and seize Plaintiff's property which set and constituted official policies of SHERIFF.

166. Defendant SHERIFF is responsible for hiring and supervising the law enforcement officers who work for him and, when necessary, for investigating alleged wrongdoing by his employees and disciplining those employees. At all times referred to herein, Defendant SHERIFF failed to properly train, supervise, investigate and discipline its officers as alleged herein. This failure to supervise, investigate and discipline SHERIFF's officers constitutes either one or more improper policies of Defendant SHERIFF which resulted in the deliberate indifference to the constitutional rights of the Plaintiff. The SHERIFF, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to discipline its officers named herein which established a policy, by a final policy-maker, that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.

167. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff.

## COUNT X
## FOURTH AMENDMENT VIOLATION – UNCONSTITUTIONAL SEARCH AND SEIZURE
### (Against Defendant KATHERINE MCCANN  under 42 U.S.C. § 1983)

168.   Plaintiff re-alleges paragraphs 1-97 above, and incorporates those allegations in this Count. This Count is pled in the alternative.

169.   This count sets forth claims against Defendant KATHERINE MCCANN for unconstitutional search and seizure under the Fourth Amendment to the United States Constitution, in that she entered Plaintiff's home without being invited in and in the absence of any exigent circumstances or other circumstances which would justify the uninvited entry into the home or a warrant.   Defendant KATHERINE MCCANN is a person under the laws applicable to this count.

170.   The Defendant's violations of the Fourth Amendment to the United States Constitution were of the type and character as to which any reasonable person would be aware.

171.   Defendant KATHERINE MCCANN acted in bad faith and with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

172.   The foregoing actions of Defendant KATHERINE MCCANN were willful, wanton and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification and/or in the absence of probable cause.

173.   Based upon the facts presented to this Defendant and the applicable law, no reasonable law enforcement officer could have concluded that there existed any legal basis to enter Plaintiff's home without being invited in, a warrant or exigent circumstances.  The law was well settled and clearly established that the actions of Defendant constituted an unlawful search and seizure under the Fourth Amendment to the United States Constitution at the time the actions by Defendant were committed.

174.   The actions or inactions of Defendant as set forth in part above constituted deliberate indifference or reckless disregard for the safety of Plaintiff when Defendant knew of and disregarded a risk to Plaintiff's health and safety.

175.   Defendant KATHERINE MCCANN misused her power, possessed by virtue of state law, and made possible only because she was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

176.   As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments.  These damages have occurred at present, in the past, and will most likely occur in the future.  Plaintiff is also entitled to punitive damages under this count.

## COUNT XI
## <u>FOURTH & FOURTEENTH AMENDMENTS –FALSE ARREST</u>
### (Against Defendant SHERIFF under 42 U.S.C. § 1983)

177.    Plaintiff realleges and incorporates by reference paragraphs 1-97 as if fully set forth herein.

178.    This count is brought under 42 U.S.C. § 1983 against Defendant SHERIFF  for maintaining unconstitutional policies, practices, and customs which directly caused the violations of Plaintiff's rights under the Fourth Amendment.

179.    This count sets forth a claim against Defendant because its deputies, employees, and agents operated to violate Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from an illegal and false arrest.  These violations were of the type and character as to which any reasonable agency or officer person would be aware. Defendant is a person under applicable law.

180.    Through its officers, employees, and agents, specifically Rawlins, Holloway and Orcutt, Defendant misused its power, possessed by virtue of state law and made possible only because it and its officers, employees and agents were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

181. The foregoing actions of the Defendant were undertaken without any lawful justification and in the absence of probable cause. Defendant's officers, employees and agents, specifically Lerner and Canales, knew or should have known that there was no probable cause to arrest Plaintiff given the circumstances present and the clearly established law on the proof needed to establish "arguable probable cause."

182. Defendant, through the Sheriff and Holloway, as final policymakers, caused Plaintiff to be unlawfully arrested and prosecuted despite lacking probable cause, and relied upon falsified or misleading facts to justify the criminal charges.

183. Defendant, through his final policymakers, directed the illegal and false arrest of Plaintiff, the false affidavits filed in support of her arrest and her rearrest, again on false charges.

184. Defendant is liable under *Monell* for the following reasons:

a. **Policy or Custom**: He maintained an informal custom or practice of condoning the false arrest and contrived allegations of probable cause to arrest persons like Plaintiff;

b. **Failure to Train**: He failed to train his officers—including Rawlins, Orcutt and others—in lawful arrest procedures and the constitutional standards for criminal prosecutions;

47

c.    **Failure to Supervise**: He failed to supervise Holloway and Deputies Orcutt and Rawlins, and permitted their misconduct—including falsification of probable cause affidavits used to effect Plaintiff's arrests;

d.    **Ratification**: He ratified the actions of Holloway, Orcutt and Rawlins by refusing to discipline or investigate them even after the truth of the false charges and lack of probable cause became evident;

e.    **Delegated Policymaker**: He, personally, directed Plaintiff's arrest or Holloway, as a delegated final policymaker, did so independently or at the Sheriff's direction.  Both the Sheriff and Holloway had final decision-making authority.

185.    Based upon the facts presented to Defendant through its deputies, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any probable cause to arrest Plaintiff.  The law was well settled and clearly established that the actions of the Sheriff through its officers, employees and agents constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

186.    The actions or inactions of Defendant as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Plaintiff when it knew of and disregarded a risk to Plaintiff's health and safety.

48

187.    Defendant acted with deliberate indifference in the failure to implement adequate training and supervisory procedures or implemented no such policies or procedures to prevent the harm that was caused to Plaintiff, including policies or procedures to properly identify suspects, policies and procedures to identify officers who falsify facts to support probable cause to arrest persons like Plaintiff, and policies and procedures to properly discipline officers who willfully trample on the constitutional rights of law abiding citizens, like Plaintiff, and to prevent the type of harm described in part above, as a direct result of which Plaintiff was arrested. Defendant Sheriff was also deliberately indifferent in failing to train his officers and agents, which resulted in constitutional violations as set forth in part above.

188.    Defendant, acting through the Sheriff and Holloway, as final policymakers, is responsible for supervising the law enforcement officers who work under him and, when necessary, for investigating alleged wrongdoing by the employees, reporting their misconduct and/or disciplining those employees. Instead, Defendant ordered or approved the false arrest of Plaintiff. At all times referred to herein, Defendant acted through its final policymakers whose approval of Plaintiff's arrests was unchecked and had no meaningful review, to deprive Plaintiff of her constitutional right to be free from a false arrest. Defendant Sheriff and Holloway were instrumental in effecting Plaintiff's arrest. They also acted under color of state law, with deliberate indifference to the constitutional rights of the Plaintiff set forth

49

above. Defendant, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to discipline Holloway, Orcutt and Rawlins and other officers, employees, and agents which established a policy, by a final policy-maker, that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.

189.  The actions of Holloway, Orcutt and Rawlins and other officers, employees, and agents were not subject to any review by any higher officers and they were, based on their positions with the Defendant, given the authority, delegated or otherwise, to make the decisions and take the actions against Plaintiff alleged herein.

190.  As a direct and proximate result of Defendant's customs and policies, Plaintiff was wrongfully arrested, jailed, and subjected to public embarrassment, trauma, and economic loss. The outcome of the criminal case was favorable to Plaintiff.

191.  As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, lost wages, lost capacity to work embarrassment, humiliation, loss of reputation, and other tangible and intangible damages. These damages have occurred in the past, occur at present, and will most likely occur in

the future. Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## COUNT XII
## FOURTH AMENDMENT – UNLAWFUL SEIZURE / FALSE ARREST
### (Against Defendant ORCUTT, in his Individual Capacity, pursuant to 42 U.S.C. § 1983)

192. Plaintiff realleges and incorporates by reference paragraphs 1-97 as if fully set forth herein.

193. This is an action under 42 U.S.C. § 1983 against Defendant ORCUTT in his individual capacity for violating Plaintiff's clearly established rights under the Fourth Amendment to be free from unreasonable seizures and arrests. Defendant is a person under the applicable law.

194. Defendant, acting under color of state law, arrested Plaintiff despite the lack of probable cause or articulable suspicion of criminal activity.

195. Defendant falsely stated in his arrest affidavit that Plaintiff committed one or more criminal offenses.

196. Plaintiff was arrested without probable cause and detained before being rearrested and again detained. All charges were dropped, a result in Plaintiff's favor.

197. No objectively reasonable officer in Defendant's position could have believed that arresting Plaintiff was lawful.

198.   Defendant's actions violated clearly established law, including but not limited to *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), which held that an arrest without arguable probable cause defeats qualified immunity.

199.   Defendant is not entitled to qualified immunity.

200.   As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, lost wages, lost capacity to work embarrassment, humiliation, loss of reputation, and other tangible and intangible damages.  These damages have occurred in the past, occur at present, and will most likely occur in the future. Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper. Plaintiff seeks punitive damages under this Count.

**COUNT XIII**
**FOURTH AMENDMENT – UNLAWFUL SEIZURE / FALSE ARREST**
**(Against Defendant RAWLINS, in his Individual Capacity, pursuant to 42 U.S.C. § 1983)**

201.   Plaintiff realleges and incorporates by reference paragraphs 1-97 as if fully set forth herein.

202.   This is an action under 42 U.S.C. § 1983 against Defendant RAWLINS in his individual capacity for violating Plaintiff's clearly established rights under the

Fourth Amendment to be free from unreasonable seizures and arrests. Defendant is a person under the applicable law.

203.  Defendant, acting under color of state law, arrested or participated in the arrest of Plaintiff despite the lack of probable cause or articulable suspicion of criminal activity.

204.  Defendant falsely stated in his arrest affidavit or contributed to the false statements that Plaintiff committed one or more criminal offenses.

205.  Plaintiff was arrested without probable cause and detained before being rearrested and again detained.  All charges were dropped, a result in Plaintiff's favor.

206.  No objectively reasonable officer in Defendant's position could have believed that arresting Plaintiff was lawful.

207.  Defendant's actions violated clearly established law, including but not limited to *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), which held that an arrest without arguable probable cause defeats qualified immunity.

208.  Defendant is not entitled to qualified immunity.

209.  As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, lost wages, lost capacity to work embarrassment, humiliation, loss of reputation, and other tangible and intangible damages.  These damages have occurred in the past, occur at present, and will most likely occur in

the future. Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper. Plaintiff seeks punitive damages under this Count.

## COUNT XIV
## FOURTH AMENDMENT – UNLAWFUL SEIZURE / FALSE ARREST
### (Against Defendant HOLLOWAY, in his Individual Capacity, pursuant to 42 U.S.C. § 1983)

210.  Plaintiff realleges and incorporates by reference paragraphs 1-97 as if fully set forth herein.

211.  This is an action under 42 U.S.C. § 1983 against Defendant HOLLOWAY in his individual capacity for violating Plaintiff's clearly established rights under the Fourth Amendment to be free from unreasonable seizures and arrests. Defendant is a person under the applicable law.

212.  Defendant, acting under color of state law, caused or directed the arrest of Plaintiff despite the lack of probable cause or articulable suspicion of criminal activity.

213.  Defendant caused Plaintiff to be arrested through false statements in subordinates arrest affidavits that Plaintiff committed one or more criminal offenses.

214.  Plaintiff was arrested without probable cause and detained before being rearrested and again detained.  All charges were dropped, a result in Plaintiff's favor.

215. No objectively reasonable officer in Defendant's position could have believed that arresting Plaintiff was lawful.

216. Defendant's actions violated clearly established law, including but not limited to *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), which held that an arrest without arguable probable cause defeats qualified immunity.

217. Defendant is not entitled to qualified immunity.

218. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, lost wages, lost capacity to work embarrassment, humiliation, loss of reputation, and other tangible and intangible damages. These damages have occurred in the past, occur at present, and will most likely occur in the future. Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper. Plaintiff seeks punitive damages under this Count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's

55

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)   enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)   award Plaintiff interest where appropriate; and

(g)   grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 17th day of March 2026.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF