UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIN ORTINO,

Plaintiff,

v.

Case No. 2:26-cv-00772-KCD-KRH

CARMINE MARCENO, ANDREW ORCUTT, JOHN HOLLOWAY, DEAN RAWLINS,

Defendants,
_______________________________/

**ORDER**

Plaintiff Erin Ortino sues her former employer, Defendant Sheriff Carmine Marceno, and some of her former colleagues. The claims all stem from Ortino's alleged false arrest and termination. (*See* Doc. 48.) Defendants now move to dismiss the complaint, lobbing a series of underdeveloped attacks—many consisting of a single sentence without any legal authority. (Doc. 52.) Ortino's defense of her complaint is only marginally more helpful, relying mostly on broad assertions rather than analogous case law. (Doc. 53.) This Court is not in the business of patching holes in deficient briefing. So while some of Ortino's claims may ultimately fall short once the arguments are sharpened, she has alleged enough facts to tell a plausible story. Her case will thus move forward.

## I. Background

Ortino joined the Lee County Sheriff's Office ("LCSO") in 2019 and, by all objective measures, prospered. Over a five-year tenure, she rose to the rank of detective and collected a steady stream of accolades. But Ortino also had much to say about how Sheriff Marceno ran his operation. This case stems from Sheriff Marceno's alleged attempt to quiet Ortino, an effort she claims ended in her retaliatory arrest and termination. At this stage, we must accept the story as Ortino tells it.

Despite Ortino's early success with LCSO, she noticed differences in the treatment she received compared to her male colleagues. (*See* Doc. 48 at ¶¶ 9-12.) For example, she was assigned a non-compliant patrol vehicle covered in chewing tobacco and reeking of cigarettes. (*Id.* ¶ 14.) Reporting the vehicle's condition earned Ortino a mandate to apologize and threats of being "blackballed." But when a male colleague raised the same issue, he received a prompt apology and a clean car. (*Id.* ¶¶ 15-19.) That wasn't all. For over a year, she was assigned almost twice the caseload as her fellow detectives—all of whom were male. (*Id.* ¶ 27.) She alone was also assigned additional tasks usually reserved for supervisors. (*Id.* ¶¶ 30, 41.) Again, reporting the issue proved futile. (*See id.* ¶¶ 28, 30.)

Beginning in September 2023, Ortino became increasingly vocal in expressing concerns about Sheriff Marceno. It started with questioning his

decision to assign office space to "consultant[s]." (*See id.* ¶¶ 23-26.) It later ballooned into Ortino serving as the taxpayer's champion, scrutinizing Sheriff Marceno's financial decisions and their cost to the public dollar. (*See id.* ¶¶ 34-35, 39-40, 43-47.) She also objected to her mandatory attendance at Sheriff Marceno's off-duty campaign events. (*See id.* ¶¶ 31-32.)

Ortino soon realized that the department didn't play nicely with those who crossed Sheriff Marceno. Most notable was the warning about skipping his campaign events: "Command [s]taff [will] be informed, and it [will] not look good for [your] career." (*Id.* ¶ 32.) Even attending wasn't enough. One officer instructed Ortino that there were "suggested" donations tied to rank—$100 for deputies and $250 for detectives. (*Id.*) Naturally, command staff reported each agency member's contribution, "and if [Ortino] wished to be promoted, she was advised to donate money." (*Id.* ¶ 33.)

These issues culminated with Ortino's arrest. The catalyst was an encounter at her home where Lindsey Hayes, an acquaintance of Ortino's wife, allegedly ambushed Ortino, attacked her, and then falsely accused her of domestic violence. (*See id.* ¶¶ 50, 53, 55.) The main event, however, was the ensuing investigation. From the start, the responding deputies—including Defendant Andrew Orcutt—credited Hayes's accusations that Ortino attacked both her and Ortino's wife. (*Id.* ¶¶ 53, 56.) This was despite Ortino's efforts to offer exculpatory evidence. She "emptied her pockets in

view of Orcutt's body-worn camera to demonstrate that she was not armed." (*Id.* ¶ 55.) She told them about Hayes's questionable credibility. (*Id.* ¶¶ 56-57.) She even offered video recordings that contradicted Hayes's allegations. (*Id.* ¶¶ 57, 59.) And it wasn't just Ortino. Ortino's wife—the alleged victim—showed Deputy Orcutt that she had no injuries and denied any domestic violence. (*Id.* ¶¶ 58, 59.)

It didn't matter. Defendant Deputy Dean Rawlins prepared the probable cause statement "knowing[]" that it contained "false" information from Hayes, and Deputy Orcutt hauled Ortino off for domestic violence. (*Id.* ¶¶ 59, 63.) To add insult to injury, Deputy Orcutt informed Ortino that "command staff" ordered her arrest, and he acknowledged that she "was being unlawfully detained." (*Id.* ¶ 61.)

Then came the pressure for Ortino to resign. The next day, she was instructed to report to the LCSO where she was presented with resignation paperwork. (*Id.* ¶¶ 65-66.) Defendant Undersheriff John Holloway endorsed the line designated for Sheriff Marceno. (*Id.* ¶ 66.) Because Ortino refused, Sheriff Marceno and Holloway called Ortino's father, a mutual acquaintance, and asked him to pressure Ortino into leaving. (*Id.* ¶¶ 68-69.) And if not, the media would get its hands on "adverse information." (*Id.* ¶ 69.) Ortino again refused, and negative stories about her appeared locally. (*Id.* ¶¶ 70-71.)

Within a few weeks, Sheriff Marceno filed a Risk Protection Order against Ortino. As its name suggests, the order deemed Ortino a threat to her community and mandated she surrender her firearms. (*Id.* ¶ 72.) After a judge tossed that order for insufficient evidence, a second warrant was issued charging Ortino with aggravated assault with a deadly weapon based on Hayes's original story. (*Id.* ¶¶ 76-77, 79.) Ortino then turned herself in. Waiting for her was a formal termination, signed once again by Undersheriff Holloway on a line meant for Sheriff Marceno. (*Id.*)

All charges were eventually dismissed, and this lawsuit followed. (*Id.* ¶ 80.) Ortino brings a twelve-count complaint, suing both Sheriff Marceno in his official capacity and Orcutt, Rawlins, and Holloway in their individual capacities. Against Sheriff Marceno and Holloway, she brings § 1983 claims for gender discrimination under the Fourteenth Amendment's Equal Protection Clause and retaliation under the First Amendment.[1] She also levies, against all defendants, false imprisonment claims under Florida law and § 1983 false arrest claims under the Fourth Amendment. Defendants now seek to dismiss Ortino's complaint for violating pleading standards and failing to state a claim.

[1] While the technical basis for Ortino's § 1983 retaliation and false arrest claims is the Fourteenth Amendment, the Court will identify the claims as under the First and Fourth Amendments for ease of reference.

## II. Standard of Review

To survive dismissal under Fed. R. Civ. Proc. 12(b)(6), the plaintiff must allege sufficient facts to state a plausible claim for relief. *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1291 (11th Cir. 2025).[2] A facially plausible claim pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We must accept all well-pleaded facts as true and construe all reasonable inferences in the light most favorable to the plaintiff. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). This, however, doesn't include conclusory allegations or legal conclusions. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021).

## III. Discussion

This Court will address only the arguments Defendants press in their brief—and nothing more. "District courts cannot concoct or resurrect arguments [that the parties] neither made nor advanced." *See Maradiaga v. United States*, 679 F.3d 1286, 1293 (11th Cir. 2012).

First up, Defendants spill much ink arguing that Ortino's complaint is an impermissible "shotgun pleading." (*See* Doc. 52 at 2-3, 5-7, 9-12.) The

[2] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

shotgun pleading doctrine is designed to prevent complaints that are so vague, disjoined, or repetitive that a defendant cannot decipher what they are being sued for. But it is not a formalistic trap to snare pleadings that lack absolute precision. *See, e.g.*, *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Ortino's complaint, although lengthy, tells a chronological story and ties facts to specific claims against specific defendants. It is not a shotgun pleading. *See, e.g.*, *Green v. Miami-Dade Cnty.*, No. 08-20016-CIV, 2008 WL 11333589, at *1 (S.D. Fla. Oct. 16, 2008). Defendants' briefing proves the point. Tucked into their motion is a table identifying which paragraphs are directed at which defendant for every count. (Doc. 52 at 6-7.) Defendants can hardly complain that they have been left to guess at the charges against them. *Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021).

So the Court will turn to Defendants' five substantive arguments. First, they argue that Ortino's constitutional gender discrimination (Count I) and retaliation (Count III) claims against Sheriff Marceno fail under the *Monell* doctrine. Second, they argue that Ortino failed to plead causation between her protected speech and the alleged retaliation (Counts III-IV). Third, they argue that Ortino was arrested with probable cause, which prevents her false imprisonment (Counts V-VIII) and Fourth Amendment false arrest claims

(Counts IX-XII). Fourth, they maintain that Fla. Stat. § 901.15(7) provides civil immunity against Ortino's false imprisonment claims (Counts V-VIII). Finally, they contend that qualified immunity undermines her Fourth Amendment false arrest claims (Counts IX-XII). The Court addresses each argument in turn.

## I. Ortino's constitutional claims survive

Sheriff Marceno offers only two defenses against Ortino's Equal Protection and First Amendment retaliation claims (Counts I-IV). First, he argues that Ortino failed to plead enough to hold him liable in his official capacity under the *Monell* doctrine. (*See* Doc. 52 ¶ 5.) Second, he argues that Ortino failed to plead any causation between her alleged statements and the retaliation. (*See* Doc. 52 ¶ 7.) Before parsing these arguments, it helps to understand Ortino's claims.

The vehicle for Ortino's constitutional claims is 42 U.S.C. § 1983. That statute "creates a cause of action against any person who deprives someone of their federally protected rights under color of state law." *Grieb v. Rambosk*, 823 F. Supp. 3d 1297, 1305 (M.D. Fla. 2026). Each separate constitutional claim has its own standard. *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Fourteenth Amendment's Equal Protection Clause creates "a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." *Cross v. State of Ala., State Dep't of*

*Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995). The claim essentially requires (1) a "tangible adverse effect" on employment; and (2) "discriminatory intent," demonstrated through either direct or circumstantial evidence of "intentional discrimination" or "disparate treatment" based on gender. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018); *see Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) (explaining that Equal Protection claims based on employment discrimination use the same framework as Title VII).

The First Amendment provides public employees with a basic right to speak freely without retaliation. *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 841-42 (11th Cir. 2000). At this stage, a public employee must show that in "expressing herself she [was] speaking both (a) as a citizen—rather than in her capacity as a government employee—(b) about a matter of public—rather than private—concern." *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1289-90 (11th Cir. 2025); *see Turner v. Atlanta Indep. Sch. Sys.*, 805 F. Supp. 3d 1277, 1298-99 (N.D. Ga. 2025). She must also show "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025).

**A. *Monell* liability**

In the single paragraph Sheriff Marceno devotes to Ortino's Equal Protection Clause claims, he raises only one substantive issue: Ortino failed to "identify the [violative] policy, practice, or custom" to hold him liable in his official capacity. (Doc. 52 ¶ 5.) But Sheriff Marceno's understanding of his exposure is incomplete.

True, Congress did not intend to hold municipalities liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). But the "official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Thus, one can prove an act is "of the municipality" by using "a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480.

An "official policymaker" is a municipal officer who possesses "final policymaking authority over the relevant subject matter." *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997). But where decisions are "subject to meaningful administrative review," the official no longer has "final policymaking authority." *Id.* at 514. Whether administrative review is "meaningful" is another question as well. *See Lopez v. Gibson*, 770 F. App'x

982, 992 (11th Cir. 2019). The entire enterprise of final policymaking or decision-making authority revolves around state law. *Id.*

Ortino has alleged enough facts for the Court to reasonably infer that Sheriff Marceno possessed final decision-making authority over the retaliatory acts alleged (*i.e.*, her termination and arrest). *See Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987) (holding that a Florida sheriff had "absolute authority over the appointment and control of his deputies"). She claims two officers advised her that "[c]ommand [s]taff" would know if Ortino skipped Sheriff Marceno's off-duty campaign event "and it would not look good for her future career." (Doc. 48 at ¶ 32.) Relatedly, she alleges that one officer informed her that "[c]ommand [s]taff" were tracking each agency member's donations to Sheriff Marceno's campaign, with a higher amount "suggested" for detectives like Ortino. (*Id.* ¶¶ 32-33.) She also alleges that Orcutt admitted that "command staff ordered him to arrest [her]." (*Id.* ¶ 61.) And as for her termination, she alleges that "the document was signed by Holloway on the line for [Sheriff] Marceno's signature." (*Id.* ¶ 77.) This was after Sheriff Marceno and Holloway also called Ortino's father to allegedly coerce her to resign or else "adverse information would be released publicly." (*Id.* ¶ 69.) Finally, Ortino alleges that Sheriff Marceno took several employment actions against other officers. (*Id.* ¶¶ 83 (terminating and re-hiring an officer), 84 (placing an officer on administrative leave).)

A different reality might emerge once the parties dig into discovery. *See Maschmeier v. Scott*, 269 F. App'x 941, 943-44 (11th Cir. 2008) (finding a meaningful opportunity for administrative review of employment actions from the LCSO post-summary judgment). At this stage, however, Defendants offer no argument that Sheriff Marceno's decisions are subject to any oversight. Accepting that Sheriff Marceno is a final decision-maker, as the Court must, his *Monell* argument necessarily fails. *See, e.g.*, *Killmon v. City of Miami*, No. 04-20707-CIV, 2006 WL 8433272, at *6 (S.D. Fla. Feb. 1, 2006).

**B. Causation**

Sheriff Marceno's only substantive argument against Ortino's retaliation claims is that Ortino failed to suggest a retaliatory motive or "assert a causal connection" between the alleged statements and challenged conduct. (*See* Doc. 52 at 4 (¶ 7).) But that argument fails too.

There must be "a causal connection between the government[-] defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). The Eleventh Circuit, however, construes the "causal link element broadly" so that a plaintiff "merely" must plausibly allege that the protected activity and the negative employment action are "not completely unrelated." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008); *Usai v. Club Mgmt. Miami II, LLC*, 801

F. Supp. 3d 1295, 1316 (S.D. Fla. 2025) (noting that "prov[ing] causation" isn't necessary in the complaint).

"Close temporal proximity may be sufficient . . . to show that the protected activity and the adverse action were not wholly unrelated." *Usai*, 801 F. Supp. 3d at 1326. For example, a two-month proximity between a person's "constant[] and repeated[] criticism" of an official and the alleged retaliation was "rather suggestive." *Higgins*, 151 F.4th at 1282-83. And close temporal proximity can also create a reasonable inference that protected speech was ultimately communicated to the retaliator. *See Bailey v. Wheeler*, 843 F.3d 473, 482-83 (11th Cir. 2016).

Drawing all reasonable inferences in Ortino's favor, she clears the hurdle. For starters, Ortino had *much* to say about Sheriff Marceno's operation. From September 2023 to March 2024, Ortino habitually complained to others about Sheriff Marceno's alleged unethical practices and waste of taxpayer dollars. (Doc. 48 at ¶ 47.) She complained about Sheriff Marceno pressuring deputies to attend an off-duty campaign event. (*Id.* ¶¶ 32-33.) She complained about Sheriff Marceno using taxpayer funds on rebranding vehicles, restructuring agency divisions, purchasing new (and larger) photos of himself for public display, replacing office doors, and running the inefficient "STET" program. (*Id.* ¶¶ 34-35, 39, 43-45.) She complained about a policy of allowing deputies to trade working-hours for

participating in the local Edison parade. (*Id.* ¶ 40.) And, notably, she complained that she "was regularly assigned additional tasks [for STET] outside of her job description" without additional pay. (*Id.* ¶ 41.)

According to Ortino, nothing good came from her complaints. She was (1) falsely arrested—twice (once on March 17 and the other on April 9); (2) pressured into resigning from her job, and when that failed, terminated; (3) suffered the release of "negative information" to "media outlets"; and (4) subjected to a Risk Protection Order that either Sheriff Marceno or Holloway filed. (Doc. 48 at ¶¶ 60-61, 66-69, 70-75, 77, 79.)

And important for present purposes, these retaliatory actions occurred either within the same month that Ortino last complained about Sheriff Marceno or within a week or two thereafter. (*Id.* ¶¶ 47, 48, 60, 62, 66, 70, 72, 75-76, 77, 79.) That temporal proximity falls comfortably within the timeframes both the Eleventh Circuit and courts within it have found sufficient at this stage. *See, e.g.*, *Higgins*, 151 F.4th at 1282-83 (two-month temporal proximity); *Usai*, 801 F. Supp. 3d at 1326 (one-to-three-month temporal proximity).

But that's not all Ortino pleads here either. Her colleagues warned her that if she skipped the off-duty campaign event (of which she complained), "[c]ommand [s]taff would be informed, and it would not look good for her career." (Doc. 48 at ¶ 32.) It was also "suggested" that she, like her

colleagues, donate to Sheriff Marceno's reelection campaign—$100 for deputies and $250 for detectives to be exact. (*Id.*) She alleges that two colleagues dismissed her complaints about rebranding vehicles "as they appeared . . . afraid to speak out against the Sheriff." (*Id.*) She goes as far as alleging that Orcutt "acknowledged to [Ortinto] that she was being unlawfully detained." (*Id.* ¶ 61.)

Ortino's allegations paint quite the portrait of Sheriff Marceno's office, which the Court must accept as true here. *See, e.g.*, *Moultrie v. Gielow*, No. 25-11865, 2026 WL 3013056, at *4 (11th Cir. Oct. 6, 2026) (reasoning that an official's statement that "he did not take kindly to [the plaintiff's] grievances" "suggest[ed] a subjective motivation" for a First Amendment retaliation claim).

Sheriff Marceno, however, plays one more card. He argues that Ortino "fails to articulate when, how[,] or from whom the Sheriff or Undersheriff allegedly learned" of her speech. (Doc. 52 at ¶ 7.) But the Eleventh Circuit has inferred that protected speech was somehow communicated to an alleged retaliator when there was close temporal proximity to the retaliation. *See Bailey*, 843 F.3d at 482-83. Those are the facts here. Because Defendants have not attacked Ortino's retaliation claims on any other basis (aside from *Monell* liability), the Court is satisfied to let them proceed.

## II. Ortino's false imprisonment and false arrest claims survive

Sheriff Marceno offers three arguments against Ortino's Florida false imprisonment (Counts V-VIII) and Fourth Amendment false arrest (Counts IX-XII) claims. First, he asks the Court to take judicial notice of an external police report, arguing it conclusively establishes probable cause and precludes all eight counts. Second, because the arresting officers acted "in good faith and exercise[d] due care in making [the] arrest," Florida's statutory immunity defeats the false imprisonment claims (Counts V-VIII). And third, all individually named defendants are entitled to qualified immunity on the Fourth Amendment claims (Counts X-XII).

Again, an overview of Ortino's claims provides helpful context. False imprisonment under Florida law is "the [1] unlawful restraint of a person [2] against h[er] will." *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022). Key to whether a police officer falsely imprisoned someone is probable cause, which completely bars the claim. *Id.*

Similarly, a "warrantless arrest without the existence of probable cause violates the Fourth Amendment and forms a basis for a § 1983 claim." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). So under the Fourth Amendment, a plaintiff must allege: "(1) a lack of probable cause and (2) an arrest." *Id.* With these elements handy, the Court turns to Sheriff Marceno's arguments.

**A. Ortino sufficiently pleads manufactured probable cause**

Sheriff Marceno first invites the Court to peek into external "court records" for "certain facts" that establish the probable cause necessary to defeat Ortino's state and federal claims. (*See* Doc. 52 at 13-16 & n.4.) While probable cause is a defense here, the Court will take a rain check on accrediting contested facts outside the complaint until after discovery. We are currently trapped within "the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337-38 (11th Cir. 2002). Meaning we must accept Ortino's allegations as true and draw all reasonable inferences in her favor. *Id.*

Sheriff Marceno insists that this Court may take judicial notice of "public records that [are] not subject to reasonable dispute because they [are] capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). Perhaps true, but not so here. Ortino's entire argument is that the "[p]robable [c]ause [s]tatement prepared by Rawlins, with information from Orcutt, is . . . false and was known to be false at the time it was prepared." (Doc. 48 at ¶ 59.) Ortino then specifies *twelve* factual allegations that contradict the arrest statement. (*See id.*) Because it's an outside record both in "reasonable dispute" and "question[]," the Court cannot venture inside it. *See Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1333,

1337-38 (S.D. Fla. 2014) (refusing to consider the probable cause alleged in an unreferenced and contradictory police report).

That leads to the next issue: Whether Ortino sufficiently pleads an absence of probable cause required to pursue either the state (Counts V-VIII) or federal (Counts IX-XII) claims. The Court believes she does.

Probable cause exists when "a reasonable officer could conclude that there was a substantial chance of criminal activity" given the "totality of the circumstances." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022). While an officer isn't required to "explore and eliminate every theoretically plausible claim of innocence before making an arrest," there are guardrails. *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). First and foremost, "falsifying facts to establish probable cause" is "patently unconstitutional." *Id.* at 1232. Likewise, "[a]n officer may not choose to ignore information . . . offered to him[.]" *Id.* at 1229. Nor may he conduct a biased investigation or "elect not to obtain easily discoverable facts." *Id.*

Regardless of the actual veracity of Ortino's claims, she alleges all of the above. According to Ortino, Rawlins prepared the probable cause statement "knowing[]" the information within it was "false." (Doc. 48 at ¶ 59.) She alleges that on-scene video footage contradicted many facts used to create probable cause. (*See id.* ¶ 59(B), (G), (H), (I).) She alleges video proof that she was unarmed during the encounter. (*See id.* ¶¶ 55, 57, 59(H).) And

she claims that the alleged victim denied all domestic violence allegations and had no visible injuries that would validate them. (*See id.* ¶¶ 58, 59(F), 59(I)-(J), 59(J), 62, 63.) To top it off, this was all available or offered to the responding deputies. (*See id.* ¶¶ 55-59.)

Ortino, therefore, pleads an absence of probable cause because she identifies both "false" facts Rawlins "knowingly" used to manufacture probable cause and easily discoverable exculpatory evidence Rawlins ignored. *See Kingsland*, 382 F.3d at 1228, 1230 (holding that "a reasonable jury could find that the [officers'] investigation was deficient in that the officers consciously and deliberately did not make an effort to uncover reasonably discoverable, material information"); *Davis v. City of Apopka*, 78 F.4th 1326, 1345 (11th Cir. 2023) (emphasizing that the complaint didn't "allege any information that was offered to the officers that they refused to consider even though it would have negated probable cause"). Since "probable cause" is the same under Florida and federal law, Ortino pleads viable claims under both. *See Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1130 (11th Cir. 2023).

**B. Statutory and qualified immunities do not apply here**

That leaves one last question: Since Ortino plausibly pleads her false imprisonment and false arrest, are the officers nevertheless immune? No. The Court analyzes both Florida statutory immunity and federal qualified immunity in turn.

### 1. Florida statutory immunity

Florida law provides civil immunity for officers making an arrest so long as the officer "acts in good faith and exercises due care." Fla. Stat. § 901.15(7). To survive a motion to dismiss on this defense, a plaintiff "need only plead facts indicative of malice or bad faith—not facts that are *so* egregious that they could *only* indicate malice or bad faith." *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2008 WL 686958, at *3-4 (S.D. Fla. Mar. 13, 2008). Alleging that an officer used false statements to fabricate probable cause to support an arrest sufficiently alleges "bad faith." *See Reynolds v. City of Daytona Beach*, No. 6:18-cv-1921-Orl-28LRH, 2019 WL 2412433, at *11 (M.D. Fla. May 22, 2019). Again, that's what Ortino alleges here—the use of "knowingly false" information to fabricate probable cause. So, Ortino's complaint (specifically, Counts V-VIII) temporarily escapes immunity under Fla. Stat. § 901.15(7).

### 2. Federal qualified immunity

Even on a motion to dismiss, whether qualified immunity shields a government actor from a § 1983 claim turns on a burden-shifting analysis. *See Hughes v. Locure*, 166 F.4th 121, 127 (11th Cir. 2026). The initial burden rests with the government actor, "who must show that he was acting within the scope of his discretionary authority when he committed the challenged act." *Id.* The burden then shifts to the complaining party, who must show

that qualified immunity is inappropriate. *Id.* This requires proving that: (1) the government actor violated her constitutional right; and (2) the conduct's unconstitutionality was "clearly established" when the violation occurred. *Id.*

No one doubts that the responding deputies were acting within the scope of their discretionary authority when they arrested Ortino. Nor could they. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (explaining that a sheriff's deputy making an arrest is acting within the scope of his discretionary authority). It's Ortino's burden then to dispel qualified immunity. *See Hughes*, 166 F.4th at 127. She has already alleged a constitutional violation because she plausibly pleads an arrest without probable cause. That only leaves whether it was "clearly established" that an officer cannot use "knowingly false" information to establish probable cause.

The touchstone of the "clearly established" requirement is "fair warning to officers that the conduct at issue violated a constitutional right." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). There are three ways to provide it, with the latter two known as "obvious clarity" cases. *Id.* at 1209. First, plaintiffs may provide a "materially similar case" decided before the controversy. *Id.* at 1208. Second, plaintiffs may "point to a broader, clearly established principle that should control the novel facts of the situation." *Id.* Third, the conduct involved could "so obviously violate the Constitution that

prior case law is unnecessary." *Id.* The relevant courts here are the U.S. Supreme Court, the Eleventh Circuit, and the Florida Supreme Court. *Id.*

Ortino plausibly alleges a violation of a clearly established right. During her arrests, Ortino alleges that Rawlins "knowingly" used "false" information to fabricate probable cause. (Doc. 48 ¶¶ 55-59, 62-63.) She also alleges how Rawlins *knew* the facts were false. (*Id.*) That's the reality within which this Court must operate. *St. George*, 285 F.3d at 1337.

Long before Ortino's arrest, the Eleventh Circuit put all officers on notice that "falsifying facts to establish probable cause is *patently unconstitutional*[.]" *See Kingsland*, 382 F.3d at 1232. At the same time, the Eleventh Circuit set the metes and bounds for reasonable investigations. Whatever leeway officers possess to conduct imperfect—but reasonable—investigations, they may not (1) choose to ignore offered information, (2) "conduct a biased investigation," or (3) "elect not to obtain easily discoverable facts." *See id.* at 1229. And the Eleventh Circuit has not abandoned those guardrails since. *See, e.g.*, *Davis*, 78 F.4th at 1345.

That's not to say that this story won't have another ending in the next chapter. Perhaps discovery will yield new facts to suggest that Rawlins didn't "knowingly" use "false" information to fabricate probable cause. Maybe Rawlins will get his chance to explain that he did not, in fact, "turn[] a blind eye to immediately available exculpatory information." *See Davis*, 78 F.4th at

1344-45. And, conceivably, new facts may undermine Ortino's allegations of exculpatory evidence. At that point, Rawlins's investigative errors—if true—may become reasonable. And the line Ortino wants to draw for when a defective investigation loses qualified immunity creates too close of a call. But for now, the procedural posture confines the Court to Ortino's allegations. And under them, she plausibly pleads enough to escape qualified immunity.

## IV. Conclusion

At this stage, it's Ortino's story to tell and this Court must listen attentively. She plausibly alleges (1) that Sheriff Marceno (or Holloway, as his designee) exercised final decision-making authority over her termination; (2) causation between her protected speech and the retaliation; (3) manufactured probable cause for her arrests; and (4) no immunity applies. Whether all that can run the gauntlet of discovery is a question for another day. Until then, Ortino's claims survive. Thus, Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 52) is **DENIED**.

**ORDERED** in Fort Myers, Florida on November 3, 2026.

Kyle C. Dudek
United States District Judge